IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

IRVING RUIZ,

        Plaintiff,

vs.                                            **Case No. 09-4079-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
        Defendant.

**MEMORANDUM AND ORDER**

On July 8, 2005, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of January 24, 2005. On February 19, 2008, a hearing was conducted upon these applications. The administrative law judge (ALJ) considered the evidence and rendered a decision on March 28, 2008. The ALJ decided that plaintiff was disabled during a period beginning on January 24, 2005 and ending on July 12, 2006. Thus, this has been labeled a "closed period" case. This case is now before the court upon plaintiff's action to review the decision to deny plaintiff benefits for the time after July 12, 2006.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). But, disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A) & 423(c).

For supplemental security income claims, a claimant becomes eligible in the first month where he is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The Tenth Circuit has held that the "medical improvement" standard applies in "closed period" cases. Shepherd v. Apfel, 184 F.3d 1196, 1198 (10th Cir. 1999). The Tenth Circuit described the application of the standard as follows:

> To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled. See id. at § 404.1594(b)(7). Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision. See id. at § 404.1594(c)(2). The ALJ must then compare the new RFC with the RFC before the putative medical improvements. The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence. See id.

Id. at 1201.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal

2

standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION

The ALJ made the following findings in his decision. He determined that plaintiff met the insured status requirements of the Social Security Act as of January 24, 2005. (Tr. 22). He found that plaintiff had not engaged in substantial gainful activity since January 24, 2005. (Tr. 22). He further found that plaintiff had the following severe impairments: "hypertrophied piriformis muscle, also diagnosed as left piriformis syndrome, and

shorter right leg, status-post motorcycle injury." (Tr. 22). Piriformis syndrome is a condition connected to the piriformis muscle and its relationship to the sciatic nerve which can cause pain after sitting or standing for several minutes. The ALJ considered evidence that plaintiff suffered from attention deficit hyperactivity disorder (ADHD) and situational depression but decided that these disorders were not severe impairments. (Tr. 22). The ALJ determined that plaintiff never had an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ decided that from January 24, 2005 through July 11, 2006 plaintiff had the RFC:

> "to perform work requiring lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 hours in an 8-hour workday (standing less than 15 minutes at a time), and sitting 6 hours in an 8-hour workday (less than 5-10 minutes at a time). The [plaintiff's] frequent position changes are inconsistent with full-time work on a regular and continuing basis."

(Tr. 23). Consistent with the testimony of a vocational expert, the ALJ determined that there were no jobs existing in significant numbers that plaintiff could have performed from January 24, 2005 through July 11, 2006. (Tr. 24).

The ALJ found that medical improvement occurred as of July 12, 2006 to such an extent that plaintiff's disability ended. (Tr. 25). He determined that as of that date, plaintiff did not have an impairment or combination of impairments that met or equaled one of

4

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25). He found that as of July 12, 2006, plaintiff's RFC permitted plaintiff:

> to perform work requiring lifting and/or carrying 50 pounds occasionally and 25 pounds frequently, standing and/or walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday (a maximum of 30 minutes at a time).

(Tr. 26). The ALJ further decided that the medical improvement was related to plaintiff's ability to work and that beginning on July 12, 2006, plaintiff was capable of performing his past relevant work as a locksmith. (Tr. 28). Therefore, the ALJ found that plaintiff was no longer qualified for benefits as of that date. (Tr. 29).

The ALJ gave controlling weight to the opinion of Dr. Tom Mayer in making his decision in this matter. Plaintiff received therapy at Dr. Mayer's clinic in Dallas Texas from March 15, 2006 to July 11, 2006. The ALJ described Dr. Mayer's findings as follows:

> On March 15, 2006, the claimant was evaluated by Tom G. Mayer, M.D., at the Orthopedics and Rehabilitation Center in Dallas, Texas, and he began therapy and injections. The claimant made good progress, and his leg length discrepancy was resolved with a 1/4-inch heel lift inside his shoe. When seen by Dr. Mayer on July 11, 2006, the claimant had completed the program. He demonstrated major improvement from a severe level of pain of an "8" level down to a "3-4" level, a markedly improved mobility to close to normal, markedly improved hip motion, and a functional capacity increase from 50-90 percent.
> . . . .
> [W]hen seen by Dr. Mayer on July 11, 2006, the claimant

5

had completed the program, he demonstrated major
improvement, his mobility was markedly improved, he had
markedly improved hip motion, and he had a functional
capacity increase from 50-90 percent. Dr. Mayer released
the claimant to return to work on July 12, 2006, with
permanent limitations of lifting 25 pounds frequently and
50 pounds occasionally with no continuous sitting.

(Tr. 24 & 28).

III. ARGUMENTS AND ANALYSIS

A. Dr. Smith's records

Plaintiff's first argument is that the ALJ failed to consider evidence from Dr. Smith showing that plaintiff's condition persisted after July 2006. Dr. Smith examined plaintiff several times in 2003, once in 2004, and several times in 2005. These examinations were not related to plaintiff's piriformis condition. Dr. Smith also saw plaintiff on March 26, 2007, after plaintiff's alleged medical recovery date. Dr. Smith recorded that plaintiff:

> [is] having problems with left-sided sciatica, [worker's compensation] injury in the past, now working on disability. Continues to have pain and problems located in the left buttocks with pain into the left leg when he sits on his left buttocks for a prolonged period of time. . . . Has difficulty sitting for prolonged period of time, more than 2-3 minutes. . . . Back reveals no vertebral point tenderness, there is left-sided buttocks tenderness mainly located over the piriformis muscle. . . . Gait and station normal.

(Tr. 315). Dr. Smith diagnosed plaintiff with "[l]eft sciatica, secondary to piriformis hypertrophy." (Tr. 315).

Dr. Smith also saw plaintiff on September 20, 2007. He recorded:

> 39-year-old male with chronic sciatica secondary to

6

> hypertrophy piriformis muscle. . . . He's been doing fairly well, states his Naproxen isn't working for him anymore and when he was taking it, developed bloody stools. That has resolved, he wonders about a separate anti-inflammatory. He also states when he gets an electric shock like pain down his legs that the Soma tends to help. He hasn't had it in quite some time.
> Exam of his back reveals no warmth, erythema, effusion, nontender spine and pelvic area. He does have tenderness to palpation of the sciatic notch on the left with radiculopathy down the left leg. He does have prominence of the left gluteus.

(Tr. 314).

Social Security regulations provide that the Commissioner will evaluate "every medical opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments] including [a claimant's] symptoms, diagnosis and prognosis . . ." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Although an ALJ is not required to discuss every piece of evidence, he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

Defense counsel admits that the ALJ did not discuss Dr. Smith's reports in the ALJ's decision. But, for several reasons, counsel argues that this is not grounds for remand. Many of counsel's arguments relate to the weight Dr. Smith's reports should

7

be given.[1]  These arguments must be rejected.  Only the ALJ can weigh Dr. Smith's opinions for the purposes of rendering a decision; the court cannot weigh evidence in the first instance. Clifton, 79 F.3d at 1009.  In addition, defense counsel cannot substitute his arguments regarding the weight of the opinion in the absence of any position taken by the ALJ regarding Dr. Smith's opinions.  See Robinson v. Barnhart, 366 F.3d 1078, 1084-5 (10th Cir. 2004)(an ALJ's decision should be evaluated solely on the reasons stated in the decision).

Defense counsel also argues that the ALJ's decision is supported by the opinion of Dr. Mayer, which was given "controlling weight."  We reject this point as well.  Assuming for the purposes of argument that Dr. Mayer qualifies as a treating physician and that Dr. Smith does not, "'[t]he treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant . . . relative to other medical evidence before the fact-finder, including opinions of other physicians.'" Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995) (quoting Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987) (quotations omitted)

---

[1] These include the following arguments:  that Dr. Smith gave only minimal treatment to plaintiff; that Dr. Smith only saw plaintiff on two occasions relevant to this matter; that plaintiff did not seek Dr. Smith's attention until seven months after plaintiff was discharged from Dr. Mayer's clinic; that Dr. Smith only administered simple prescriptions and routine medications to plaintiff; and that Dr. Smith did not observe any vertebral point tenderness.

(emphasis added in Reid)). It is important for the ALJ to weigh the report of Dr. Smith before deciding whether to give controlling weight to Dr. Mayer's opinion. Dr. Smith's opinion may be important as well because it is the only medical evidence submitted for the time period after July 12, 2006. Cf., Reid, supra (an examining physician's report concerning the time prior to the expiration of insured status is not necessarily trumped by treating physicians' reports concerning the time after the expiration of insured status).

Defense counsel further contends that Dr. Smith does not contradict Dr. Mayer in any significant way. Again, we disagree. Dr. Smith recorded that plaintiff had difficulty sitting for more than 2 or 3 minutes. This evaluation is not directly contradicted by Dr. Mayer's reports, which do not specifically address plaintiff's ability to sit for prolonged periods of time.[2] Nevertheless, upon giving Dr. Mayer's reports "controlling weight," the ALJ increased plaintiff's RFC for sitting from less than 5-10 minutes at a time to 30 minutes at a time. We therefore infer that the ALJ believed Dr. Mayer's reports supported a finding that plaintiff could sit for 30 minutes at a time for up to 6 hours in an 8-hour day.

---

[2] Dr. Mayer's progress reports indicate unspecified improvement in plaintiff's ability to sit and stand. (Tr. 302, 307) Dr. Mayer ultimately released plaintiff to "full-time work" on July 11, 2006 "with no continuous sitting." (Tr. 266).

9

Defense counsel contends that Dr. Mayer's opinion is the most well-supported opinion in the record. Perhaps this is true, but the law still requires the Commissioner to consider every medical opinion and to evaluate treating sources' opinions relative to other medical evidence, such as the report of Dr. Smith. Additionally, Dr. Mayer's opinion does not directly address plaintiff's RFC in 2007.

Finally, defense counsel asserts that the ALJ is not required to discuss every piece of evidence. This is correct. But, the law does require the ALJ to discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton, supra. Furthermore, we agree with plaintiff's counsel that Dr. Smith's reports are relevant to the ALJ's credibility analysis. Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996) (an ALJ must consider all relevant objective and subjective evidence before deciding whether he believed a claimant's assertions of pain).

The Tenth Circuit has remanded cases where an ALJ failed to discuss evidence like that detailed in Dr. Smith's reports. See Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001) ("when . . . an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination"); Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001) (an ALJ "may not ignore evidence that does not support his decision,

especially when that evidence is significantly probative"); <u>Lackey v. Barnhart</u>, 127 Fed.Appx. 455, 2005 WL 758797 (10th Cir. 2005) (ALJ failed to mention report of examining physician); <u>Victory v. Barnhart</u>, 121 Fed.Appx. 819, 2005 WL 273302 (10th Cir. 2005) (ALJ failed to mention reports of treating and examining osteopaths); <u>Miller v. Barnhart</u>, 43 Fed.Appx. 200, 2002 WL 1608452 (10th Cir. 2002) (ALJ failed to mention report of treating psychiatrist and therapist). We believe remand is required here.

    B. <u>Remaining arguments</u>

Plaintiff further argues that the ALJ's findings of improved sitting and standing capacity which led to the cessation of plaintiff's period of disability are not supported by substantial evidence. Plaintiff notes that Dr. Mayer made no specific findings that plaintiff could sit for 30 minutes at a time or stand for 6 hours in an 8-hour workday. The court does not believe that it is necessary to reach this issue because the ALJ's evaluation of plaintiff's RFC on remand will need to be redone in light of a consideration of Dr. Smith's report.

Plaintiff also argues that Dr. Mayer should not have been considered a treating physician. The court is inclined to disagree, but this does not alter the grounds for remanding this case.

IV. CONCLUSION

To conclude, the court shall reverse defendant's decision to

deny benefits in this case and remand the case for further proceedings consistent with this opinion.  This judgment and remand shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 4th day of May, 2010 at Topeka, Kansas.

                                      s/Richard D. Rogers
                                      United States District Judge